IN THE COMMONWEALTH COURT OF PENNSYLVANIA

N.P.,                                            : **CASE SEALED**
                          Petitioner             :
                                                 :
     v.                                          : No. 1612 C.D. 2024
                                                 : Submitted: April 13, 2026
Department of Human Services,                    :
                          Respondent             :


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE STACY WALLACE, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                                 FILED:  August 4, 2026


        In this sealed child abuse expunction case, N.P. (Mother) petitions for review
of the November 4, 2024 order of the Department of Human Services (Department),
Bureau of Hearings and Appeals (Bureau), adopting the adjudication and
recommendation (Adjudication) of an Administrative Law Judge (ALJ).  In its
Adjudication, the ALJ recommended denying Mother's appeal of the Department's
decision which denied Mother's request to expunge an indicated report naming
Mother as a perpetrator on the ChildLine and Abuse Registry (ChildLine)[1] under the

---

[1] "ChildLine" is defined as "[a]n organizational unit of the Department which operates a Statewide toll-free system for receiving reports of suspected child abuse . . . , refers the reports for investigation and maintains the reports in the appropriate file."  55 Pa. Code § 3490.4.

Child Protective Services Law (CPSL).[2]  On appeal, Mother asserts the Bureau erred in determining she caused bodily injury under the CPSL, and the Bureau should have considered her right to use corporal punishment as a means of discipline.  Upon review, we affirm.

## I.    Background

The Philadelphia County Department of Human Services (DHS) received a ChildLine report of suspected child abuse for this incident on February 3, 2022.  *See* ALJ Adjudication, 6/17/24, at 4.   On March 3, 2022, after completing its investigation, DHS filed the underlying indicated[3] report (the Report) of child abuse with ChildLine, naming Mother as a perpetrator of child abuse.  *Id.* at 3-4.

Thereafter, Mother timely requested the Department to expunge the Report. *Id.* at 3.  Following administrative review, the Department denied Mother's request by letter dated May 17, 2022.  *Id.*  Mother timely appealed the Department's denial to the Bureau.  *Id.*  The ALJ conducted a hearing on Mother's appeal on May 12, 2023. *Id.*  DHS presented testimony from the subject child (Child), and Dr. Marisela Vigil, M.D. (Dr. Vigil), an urgent care pediatrician for Nemours Children's Health. Certified Record (C.R.) at 87, 109.  Mother testified on her own behalf, and offered testimony from P.W., her husband and the father of the Child.  *Id.* at 87, 128.

After receiving the evidence, the ALJ found the following facts.  Mother is the biological mother of the Child, a 17-year-old female, who was approximately 16

---

[2] 23 Pa.C.S. §§ 6301-6388.

[3] A Child Protective Services agency is permitted to file an indicated report of abuse under the CPSL "if an investigation by the county agency or the Department determines that substantial evidence of the alleged abuse exists based on any of the following: (i) [a]vailable medical evidence[,] (ii) [t]he child protective service investigation[, or] (iii) [a]n admission of the acts of abuse by the perpetrator."  55 Pa. Code § 3490.4; *see also* 23 Pa.C.S. § 6303.

years old at the time of the alleged abuse. ALJ Adjudication, 6/17/24, Finding of Fact (F.F.) Nos. 1-2. On February 3, 2022, DHS received the report regarding the alleged abuse of the Child. *Id.* at F.F. No. 3. At the hearing, the Child disclosed the following: On February 1, 2022, Mother confronted the Child about being absent from school; the confrontation escalated and Mother beat the Child with a green plastic bat for two minutes; Mother struck the Child's right thumb, right arm, legs and left upper arm; immediately afterward, the Child experienced pain rated at a six or seven out of ten; the Child sought treatment at Christiana Care for bruising on her right thumb; the pain in the Child's right thumb and shoulder continued for approximately one week following the incident; and the Child received a splint or brace for her thumb that she wore for two weeks. *Id.* at F.F. No. 5. Dr. Vigil testified to the following: On February 8, 2022, she saw the Child, who presented with pain and bruising in both arms, hands, and thumbs, after allegedly being beaten with a bat five days prior; the Child was not in acute distress at the time of the examination and x-rays were negative; the Child expressed the most pain in one thumb, and was given a thumb spica splint for protection of her thumb; and Dr. Vigil diagnosed the Child with pain in both thumbs and superficial bruising on both of her arms. *Id.* at F.F. No. 6.

Mother testified to the following: Mother denied ever physically disciplining the Child, including on the date in question; Mother denied hitting the Child with a plastic bat, and owning a bat; Mother noted the Child was already subject to punishment for missing school at the time of the alleged conversation, and Mother extended the punishment afterward; Mother denied observing any bruising on the Child or hearing any complaints of pain from the Child; and Mother indicated the Child and her sibling slammed each other against a railing multiple times. *Id.* at F.F.

No. 7. P.W. testified similar to Mother, noting: He observed the conversation between Mother and the Child regarding the Child's absence from school, which was never physical; he denied seeing Mother hit the Child with a plastic bat or ever seeing one in their home; and he indicated the Child and her sibling participated in rough horseplay all the time. *Id.* at F.F. No. 8.

The ALJ found the Child and Dr. Vigil credible, and Mother and P.W. credible in part. *Id.* at F.F. Nos. 9-12. Specifically, the ALJ explained Mother's "acknowledgement that she had a conversation with the [Child] regarding missing school is credible," however "her testimony regarding the alleged horseplay between siblings as the potential cause of the [Child's] injuries, is not credible because [Mother] did not describe the [Child] specifically being injured during the alleged horseplay." *See* ALJ Adjudication, 6/17/24, at 14. Regarding P.W., the ALJ further explained "[h]is testimony [is] credible in that he witnessed the conversation between [Mother] and [the Child. However, his] testimony regarding the [Child] and her sibling's horseplay is not credible because it is vague and nonspecific." *Id.*

The ALJ provided the following analysis:

> In order to meet its burden, DHS must show that [Mother] caused bodily injury through [her] actions or failure to act and that she performed these acts intentionally, knowingly, or recklessly. Here, there is testimony from the [Child] that [Mother] hit the [Child] multiple times with a plastic bat as punishment for the [Child] allegedly missing school. The [Child's] testimony was consistent with prior recitations of the allegations. Additionally, DHS had the burden to present evidence to show that the [Child] suffered bodily injury, either showing that the [Child] suffered substantial pain or impairment. DHS presented the testimony of Dr. Vigil who testified that she treated the [Child] approximately five days after the alleged abuse. Dr. Vigil testified that upon examination, [Child] still had substantial pain, [and] bruising in her right thumb. Dr. Vigil testified that she placed the [Child] in a spica thumb splint to protect the thumb and assist with

4

healing. DHS presented sufficient evidence to show that the [Child] suffered substantial pain as a result of the actions of [Mother].

*Id.* at 15. Accordingly, the ALJ concluded "DHS has met the burden to show by substantial evidence that [Mother] committed child abuse" and recommended the Bureau deny Mother's appeal. *Id.* The Bureau, by order dated November 4, 2024, adopted the ALJ's Adjudication in its entirety. C.R. at 69.

Mother timely petitioned this Court for review. On appeal, Mother raises the following issues:

> [1] Whether DHS has met its burden to show by substantial evidence that [Mother] acted recklessly, intentionally, or knowingly with regard to causing bodily injury, as defined by the [CPSL].
>
> [2] Whether [Mother] acted with criminal negligence with regard to causing bodily injury while exercising her right to use reasonable force on her [child] for the purposes of supervision, control and discipline, under the exclusion from child abuse based on the rights of parents to use corporal punishment as a means of discipline.

Mother's Br. at 4.

## II. Analysis

In expunction cases, our review is limited to determining whether substantial evidence supports the necessary findings of fact, whether the Department committed any errors of law, or whether the Department violated a party's constitutional rights. *See G.V. v. Dep't of Pub. Welfare*, 91 A.3d 667, 672 (Pa. 2014) (citation omitted). The CPSL defines "[s]ubstantial evidence" as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303. We have further explained that substantial evidence is the equivalent of the preponderance of the evidence standard, and that "[t]he critical issue as to whether an indicated report of child abuse should

5

be expunged or maintained is whether the report is accurate." *A.O. v. Dep't of Pub. Welfare*, 838 A.2d 35, 39 (Pa. Cmwlth. 2003); *see also T.H. v. Dep't of Hum. Servs.*, 145 A.3d 1191, 1198 (Pa. Cmwlth. 2016).

"The [Bureau] is the ultimate fact-finder in expunction appeals." *F.V.C. v. Dep't of Pub. Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010) (citation omitted). "Moreover, 'the ALJ is free to accept or reject the testimony of any witness . . . in whole or in part, and determinations regarding credibility and weight of the evidence are within the province of the ALJ.'" *R.J.W. v. Dep't of Hum. Servs.*, 139 A.3d 270, 287 (Pa. Cmwlth. 2016) (citation omitted). "Absent an abuse of discretion, we will not disturb the [Bureau]'s determinations as to credibility and evidentiary weight." *Id.* at 285. This Court has explained:

> An abuse of discretion "occurs not merely when the [lower tribunal] reaches a decision contrary to the decision that the appellate court would have reached. Rather, an abuse of discretion occurs 'when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.'"

*B.B. v. Dep't of Pub. Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (citation omitted).

We begin by dispelling Mother's arguments that substantial evidence does not support the Bureau's findings of fact. Throughout her arguments, Mother makes numerous factual assertions, including that both she and her husband testified at the hearing she did not hit the Child with a plastic bat, she never administered physical discipline, she did not have a plastic bat in their home, and the Child's bruising may have been caused by horseplay or roughhousing with her sibling. *See* Mother's Br. at 11-12. As fully outlined above, however, these factual assertions are all based

6

upon Mother's and P.W.'s testimony, which the ALJ partially rejected as not credible. Against this, the ALJ weighed the testimony of the Child and Dr. Vigil, which he found fully credible. Mother has not argued the ALJ abused his discretion in reaching credibility determinations, nor does the record reveal a basis for any such argument. Accordingly, we will not disturb the ALJ's credibility determinations and will accept the Bureau's factual findings, rather than Mother's various factual assertions.

Next, we turn to Mother's argument that the Bureau erred in failing to consider the corporal punishment exclusion to child abuse.[4] The CPSL "generally recognize[s the] existing rights of parents to use reasonable force on or against their children for the purposes of supervision, control, and discipline of their children. Such reasonable force shall not constitute child abuse." 23 Pa.C.S. § 6304(d). "[I]n cases where a child suffers a serious injury arising from the administration of corporal punishment, a finding that the injury resulted from abuse versus accident will depend upon a showing, by [DHS], through substantial evidence, that the injury resulted from criminal negligence." *P.R. v. Dep't of Pub. Welfare*, 801 A.2d 478, 487 (Pa. 2002).

Mother relies upon *Allegheny County Office of Children, Youth and Families v. Department of Human Services*, wherein we determined a father did not use unreasonable force in administering corporal punishment by hitting his five-year-old daughter on the face and leg, causing bruising and scratches, for misbehaving in school. 202 A.3d 155 (Pa. Cmwlth. 2019). Additionally, Mother notes other cases, involving arguably more serious injuries to younger children, which recognized a parent's right to administer reasonable corporal punishment. *See* Mother's Br. at

---

[4] Mother contends she raised the corporal punishment exception at the hearing in her closing argument. Mother's Br. at 16 n.1. We agree the record supports this assertion. C.R. at 133-35.

17-22. However, in all, the parent **admitted** to using force upon the child, at least to **some** degree, for disciplinary purposes. *See*, *e.g., P.R.*, 801 A.2d at 480 (mother admitted to using a belt on her six-year-old child when she found the child writing on apartment walls and that the belt struck child in the eye requiring surgery); *W.S. v. Dep't of Pub. Welfare*, 882 A.2d 541, 542, 546-47 (Pa. Cmwlth. 2005) (father admitted to slapping 14-year-old daughter in the head two to three times with an open hand, resulting in temporary loss of hearing, due to daughter's continuous misconduct); and *Allegheny County*, 202 A.3d at 160-61 (father admitted to "open-hand" spanking the child on her buttocks as a means of physical discipline, but denied striking the child's face and thigh).

Here, the record belies Mother's legal contention.[5] We conclude this matter is factually distinguishable because Mother denied **ever** physically disciplining the subject child, including hitting her with a bat on the date in question. ALJ Adjudication, 6/17/24, F.F. No. 7. Moreover, Mother denied having a bat in her home and denied seeing bruising on the subject child. *Id.* P.W. testified similar to Mother in all regards. *Id.* at 8. Because Mother did not admit to using **any** physical force upon the Child for disciplinary purposes, let alone reasonable force, the ALJ had no facts upon which to base a corporal punishment analysis. After careful consideration of the record in light of applicable legal authority, we determine the Bureau did not err by not considering the corporal punishment exception to the CPSL.

---

[5] Even though the Department did not submit a brief, it made this precise closing argument at the hearing before the ALJ, noting: "At no point has anybody claimed that this was an active physical discipline. Therefore, any analysis pursuant to the corporal punishment exception is strictly not applicable. You can't have it both ways. You can't argue that nothing happened and then also argue that the corporal punishment exception applies." C.R. at 135.

8

### III.   Conclusion

For the reasons set forth above, we affirm the Bureau's November 4, 2024 order denying Mother's appeal.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

N.P.,                                        : **CASE SEALED**
                         Petitioner          :
                                             :
     v.                                      : No. 1612 C.D. 2024
                                             :
Department of Human Services,                :
                         Respondent          :

# **O R D E R**

    **AND NOW**, this 4th day of August 2026, the Department of Human Services, Bureau of Hearings and Appeals' November 4, 2024 order is **AFFIRMED**.

                                  _____

                                  STACY WALLACE, Judge